Case No. 08 C 1050

JOHN DOE, Plaintiff

v.

Jason Fortuny
320 10th St Apt 1
Kirkland, WA 98033
rfjason@gmail.com, Defendant



FILED
JUL 11 2008
JUDGE JOAN B. GOTTSCHALL

KJ

FILED
JULY 14, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

The Honorable Judge Joan B. Gottschall
United States District Court Northern District of Illinois Eastern Division
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, IL 60604


Sophie Dye
Mudd Law Offices
3114 West Irving Park Road
Suite 1W
Chicago, Illinois 60618


Dear Judge Gottschall,

I am Jason Fortuny, defendant in this case. I have decided that it is best for me to write a letter to the court explaining myself and my position. I have been accused of copyright infringement and an invasion of privacy to which the Plaintiff seeks $75,000.

I wish to make it clear that I do not have the resources for legal proceedings in another state, much less the exorbitant attorney fees for a Federal copyright case. However, it is my intent with this letter to illustrate my position and provide my opinion on why this case should be dismissed.

1

## JURISDICTION

Plaintiff and I are residents of Washington State. Yet, Plaintiff argues that Illinois is the proper jurisdiction for this case because I spoke about Plaintiff at an event in Chicago. While I did speak at an event in Chicago, the presentation was a general discussion to a room of approximately 30 people (mostly friends) that did not single out any individual for discussion. I was not paid, reimbursed, or given gratuity to appear at this event. I conducted no business in Chicago. It was the only time I have ever been to Illinois. In other words, my contact with Illinois is so fleeting, and the fact that Plaintiff and I are residents of Washington, there is no ground for finding such sufficient contact to break from the principle of personal jurisdiction.

## COPYRIGHT

Plaintiff has a copyright on a digital photo he sent to me in September 2006. I published a reduced version of the photo on my website. The digital photo is a portrait of a smiling bald man. The use of this photo on my website falls under the terms of fair use. The digital photo Plaintiff sent to me was approximately 22 kilobytes in size. Kilobytes (KB) is a measurement of the size of a file. This file size corresponds to the dimensions and amount of detail in a digital photo. The more KB, the greater the dimensions and/or detail. Digital camera photos range from 4,000KB to 60,000KB in size, depending on the camera model. By comparison, a 22KB photo is very small and lacks detail. The version of Plaintiff's photo on my website is only 5KB in size. That's an 80% reduction from Plaintiff's original photo. Unlike a professional digital photo which would sell for hundreds of dollars in a market that demands large file sizes, Plaintiff's digital photo is not a product one would generally offer for sale, or expect to be purchased.

The digital photo is used in my editorial about Digital Millennium Copyright Act law abuse. In fact, the digital photo is a key illustrative element of the piece and is used to discuss how DMCA law can be used to chill free speech. Without the photo to illustrate and educate the reader as to how far DMCA abuse can be taken, the piece loses substantial narrative value. It is clear in the piece that I am not the owner of the photo, nor am I selling the photo or providing it for free as if the only legitimate way to obtain the photo was through purchase.

There is ample case law that protects the fair use of reduced versions of media, especially for the purposes of education and discussion. In the recent Lennon v. Premise Media, Judge Sidney H. Stein rejected the Plaintiff's request for an injunction against the distribution of the documentary film "Expelled" starring Ben Stein, finding that the makers of the film were likely to prevail in their argument that the use of the John Lennon song "Imagine" was fair use under copyright law. The song is used to illustrate a point about science vs. religion in the film.

Additionally, Bill Graham Archives v. Dorling Kindersley allowed the reprinting of reduced-size versions of several historical posters used in a coffee-table book about the Grateful Dead without permission. In that case, the alleged infringers had used the works in a commercial product, but the US Court of Appeals for the Second Circuit found that "courts are more willing to find a secondary use fair when it produces a value that benefits the broader public interest."

My use of Plaintiff's digital photo is clearly fair use. The use of the photo is in reduced form, is transformative, does not affect market value of the original photo, and is for a purpose of education and public interest.

## PUBLIC DISCLOSURE OF PRIVATE FACTS AND

## INTRUSION UPON SECLUSION

Plaintiff asserts that publishing his e-mail to me constitutes the public disclosure of private facts. In this case, there are no personally identifiable facts or information. In his communication, Plaintiff does not use his actual name, or provide any method of personal contact, other than an e-mail address that functions as an effective privacy screen against intrusion upon seclusion. Plaintiff's e-mail message on my website is not edited or amended in any fashion. I have not used any method to connect Plaintiff's e-mail address or photo to Plaintiff's actual identity, or to provide the means for other persons to do so. Plaintiff's statements in his e-mail to me cannot be traced back to an actual individual by the public.

Plaintiff volunteered the information in his e-mail of his own directive, knowing the risks. On Craigslist, Plaintiff and I were required to accept the terms of use which state in section 3, "that by using the Service, you may be exposed to Content that is offensive, indecent, **inaccurate**, misleading, or otherwise objectionable." Plaintiff decided what information to provide to me through the Craigslist "Casual Encounters" personal ad system. I did not obtain any information by intruding into Plaintiff's personal space, eavesdropping, or illegally intercepting any communication. Thus, the disclosure of Plaintiff's e-mail is not, by its nature, personal or intrusive.

## MY OPINION ON THIS CASE

The Plaintiff's complaint contains a lot of language about actual malice and intent in performing the Craigslist Experiment and publishing his e-mail and photo. I've been asked over and over, "Jason, why did you do it?" To be honest, it was a small act that

4

quickly spun out of control. It's not like I woke up that morning and said, "hey, I think I'll start a controversy today and get my face in the news." I posted the fake ad with the sole intention to satisfy my curiosity about what kinds of people respond to such overt advertisements. I expected no responses. I didn't believe anyone would fall for such an obviously fake ad on a website that tells its users to exercise caution. When I received those 175 responses to my Craigslist ad, I was blown away by the utter disregard for personal privacy. Where the Plaintiff actually had the good sense not to reveal anything about himself, many other respondents provided their work e-mail addresses, telephone numbers, and real names.

 My curiosity was satisfied, but I was now fascinated by this online behavior I had discovered. I showed these responses to friends who were equally dismayed by the responses. When I suggested posting the responses to my personal blog, none of us saw any issue in doing so. At the time, my blog was simply a way to communicate with a few friends. Nothing I had ever done online garnered any real public attention, so we had no clue that publishing this information would lead to a larger controversy and discussion involving online anonymity and privacy. When my blog post received media attention, the responses showed up on EncyclopediaDramatica.com for greater exposure and ease of access. I did not personally re-post the information, nor did I have a method to control where the responses were re-posted, or to take them down. However, like the news, I provided links to Encyclopedia Dramatica from my blog so that people could see what was being discussed.

 I was continuously stunned that my actions received so much attention. Other people had performed this exact same experiment before me and they never received

5

such attention. Other more important events in the news, such as the breach of 500,000 credit card numbers from SecondLife.com, weren't receiving nearly as much attention. That there was so much coverage truly confused me.

There was no malicious intent in my actions. This was never a plan to embarrass people or to single out a subset of the population. It was curiosity that led to more curiosity and discussion, which then exploded into blog and media attention that I couldn't control.

I've struggled to integrate this experience into my life, and to make it productive. When I provide interviews or talk to friends, I don't talk specifically about the individuals who responded, or ridicule them in any way. I do speak about the larger issue of privacy on the Internet, and how to be proactive in protecting one's private information.

I have never been afraid to answer for my actions and to face anyone who takes exception with me. This case, however, is quite different. This is a case of a person trying to get his pound of flesh out of me for my perceived wrongs. The Plaintiff is seeking to punish my discussion of his DMCA actions by abusing the intent of copyright law, stretching the common law terms of privacy, using unverified e-mail as alternative process, and side stepping personal jurisdiction. These are all disturbing and questionable tactics that cannot be allowed. They each serve to erode the free speech rights of Internet users everywhere, especially the growing world of bloggers and other self-published groups. When an individual uses copyright law and privacy torts to silence critics or unjustly control publicly relevant discussion, it damages everyone's rights. Further, when someone can bring action against an individual by making guesses about his location or how to contact him instead of following due process, and bringing the action against him

in a court that's half a country away, it opens the door for others to harass and intimidate innocent bloggers who deserve justice and equal protection.

I make no excuses about who I am. I am frequently rude, unsympathetic, unempathetic, and politically incorrect, to put it mildly. But there's no law against that. And, ironically, I wasn't going for any of those things when I did the Craigslist Experiment or discussed DMCA on my website. One was just happenstance, and the other was an actual attempt to empower people to protect themselves. And my editorial actually met with some success.

I have nothing against the Plaintiff. I'm as imperfect as the next person and I don't judge him. I understand his frustration and hurt. If I made the mistake of telling secrets to someone I didn't know online and it got out, and I got in trouble for it, I'd be kicking myself pretty hard. I would most definitely be shouting expletives at my computer screen. But that's the risk we all take online, as well as in life. Whether it's someone's e-mail, picture, or personal ad, there's no guarantee of identity, and no guarantee that you won't be betrayed. And there never will be.

It is wiser and more in the public interest to educate yourself and be responsible about your own conduct than it is to remain ignorant of the online universe and suffer for it. I cannot stress this point enough: bringing legal action against me may punish me, but it won't change or even impact online culture in the positive ways that I describe above.

This is bigger than two individuals squabbling over a photo and a couple lines of text. The Plaintiff, in how he has filed suit against me, has turned this into a free speech and fair use issue with far reaching implications, and has forced me to defend not just myself, but the rights of Internet users everywhere to editorialize, educate, and discuss

7

topics freely online. Even though I simply don't have the resources to do this as properly as people might expect, I still take this responsibility seriously, and I will defend those rights should the occasion arise.

Finally, I still believe this case should be dismissed. The copyright argument is easily defeated, the privacy arguments are stretched too far, and tactics of bringing the action are highly questionable. I'm sure many people out there believe I'm guilty of something, and that I should be punished somehow, and they may be right. But not like this. Don't punish me at the expense of the rights of the greater community.


Sincerely,

Jason Fortuny